UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CIVIL NO. 09-1441 (JNE/AJB)

COLLIN MYRLIE,

    PLAINTIFF,

v.

COUNTRYWIDE BANK, COUNTRYWIDE HOME
LOANS HEADQUARTERS IN CALABASAS CA,
USA, A NY CORPORATION, FORMERLY KNOWN
AS COUNTRYWIDE FINANCIAL CORPORATION,

    DEFENDANTS.

**REPORT & RECOMMENDATION**

---

Collin Myrlie, 15781 Cobblestone Lake Parkway, Apple Valley, MN 55124 (pro se Plaintiff);

Brent R. Lindahl and Mark G. Schroeder, Briggs & Morgan, PA, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402 (for Defendants).

---

**I.    INTRODUCTION**

This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on Defendants' Motion to Summary Judgment [Docket No. 26]. These actions have been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). [Docket No. 43.] A hearing was held on the motion on November 19, 2010. Collin Myrlie appeared pro se. Mark Schroeder appeared on behalf of Defendants.

Based upon the record, memoranda, and oral arguments of the parties, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Summary Judgment [Docket No. 26] be **GRANTED** and Plaintiff's Complaint [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

## II. BACKGROUND

Many of the events in this case occurred during what has been called "the Great Recession" (i.e., the period of time from approximately December 2007 through June 2009).[1] No discussion or understanding of the economic circumstances of the Great Recession is necessary to understand the facts and the legal issues involved in this case.

The allegations in Plaintiff Collin Myrlie's Complaint can be summarized as follows: On May 19, 2005, Plaintiff purchased a property in Dakota County (hereinafter Dakota County property)[2] using a loan from Cherokee State Bank (Compl. ¶ 4, May 18, 2009); Plaintiff's loan with Cherokee State Bank was sold to Defendants Countrywide Bank and Countrywide Home Loans (*id.*); beginning in May 2008, Plaintiff was unable to make his loan payments (*id.* at ¶ 6); in August 2008, Plaintiff contacted Defendants, who agreed to a loan modification (*id.* at ¶ 7); between August and December 2008, Plaintiff contacted Defendants numerous times because he had not yet received his loan modification documents (*id.* at ¶ 8); Plaintiff was never provided with any loan documents despite Defendants' assurances that Plaintiff's loan would be modified (*id.* at ¶ 9); on November 25, 2008, the Dakota County Sheriff's Department sold the Dakota County property to Defendants (*id.* at ¶ 10); the last time that Plaintiff attempted to contact Defendants to obtain the loan modification documents was March 2009 and Plaintiff received no response from Defendants. (*Id.* at ¶ 13.) Based upon these allegations, Plaintiff brought his Complaint, asserting claims of promissory estoppel and negligence. Plaintiff contends that as a result of Defendants actions he "suffered the . . . injuries and damages of . . . [l]ost profits[,] . . .

---

[1] *See generally* Leslie E. Linfield, Class Of 2009: The Great Recession's Impact on the American Debtor, 29 AM. BANKR. INST. J. 16 (Dec./Jan. 2011).

[2] The Dakota County property is located at 15281 Cobblestone Lake Parkway in Apple Valley, Minnesota. (Myrlie Tr. 10:10-11:7, Jan. 28, 2010.)

2

[i]ncreased costs[,] . . . [and l]oss of remedies." (*Id.* at ¶ 9.) Plaintiff also seeks punitive damages. (*Id.* at ¶ 11.)

Plaintiff brought his Complaint in Dakota County District Court. On June 18, 2009, Defendants removed the case to federal court. [Docket No. 1.] On April 1, 2010, Defendants brought their Motion for Summary Judgment. This Court granted Plaintiff's request for a continuance of the hearing on Defendant's Motion for Summary Judgment. [Docket No. 51.] This Court directed Plaintiff to file his response on or before November 9, 2010. Plaintiff never filed any response to Defendant's Motion for Summary Judgment.

Defendants' motion is supported by the Affidavit of Mark G. Schroeder, which includes fifteen exhibits. The affidavit and its exhibits are the only factual record in the present case.[3] This Court presents the following facts in the light most favorable to Plaintiff, the nonmoving party. *Nelson v. Corr. Med. Servs.,* 583 F.3d 522, 525 (8th Cir. 2009) (en banc).

On May 19, 2004, Plaintiff entered into a construction loan, in the original principal amount of $575,000, with Cherokee State Bank to finance the construction of the Dakota County property. (Myrlie Tr. 101:18-104:6, Jan. 28, 2010; Aff. Schroeder Ex. B, Apr. 1, 2010.) In May 2005, construction of the Dakota County property was at or nearing completion, and as result, on May 24, 2005, Plaintiff entered into a loan modification agreement with Tradition Mortgage.[4] (Myrlie Tr. 111:16-112:2; Aff. Schroeder Ex. E.) Under the loan modification agreement, Plaintiff had an unpaid principal balance of $775,000 and promised to make monthly payments

---

[3] Plaintiff filed news articles [Docket No. 24] in connection with his Motion to Extend Deadlines [Docket No. 23] and made reference to news articles during his arguments on the Motion for Summary Judgment. These articles are not relevant to Plaintiff's claims.

[4] The purpose the loan modification was to change the loan from a construction loan to a traditional home mortgage.

of $3,713.54, consisting of principal and interest, for 30 years. (Aff. Schroeder Ex. E.) In July 2005, Tradition Mortgage assigned Plaintiff's mortgage to Defendants. (Aff. Schroeder Ex. F.)

Beginning in late 2005, Plaintiff had difficulty making his mortgage payments. (Myrlie Tr. 120:18-121:18.) Plaintiff contacted Defendants to discuss "workout assistance." (Myrlie Tr. 119:16-120:15; Aff. Schroeder Ex. G.) In late December 2005, Defendants sent Plaintiff two letters requesting information in order to review Plaintiff's request for workout assistance. (Aff. Schroeder Ex. G.) By letter, dated December 30, 2005, Defendants informed Plaintiff that because it had not received the requested information from Plaintiff that his request for workout assistance was denied. (Aff. Schroeder Ex. G.)

Plaintiff continued to have difficulty making payments throughout 2006 and 2007. (Myrlie Tr. 124:23-25.) On January 17, 2006, Defendants sent Plaintiff a "Notice of Default and Acceleration," in which Defendants informed Plaintiff that his loan was "in serious default because the required payments ha[d] not been made." (Aff. Schroeder Ex. H.) The Notice directed Plaintiff to pay $8,060.21 on or before February 16, 2006, or his mortgage payments would be accelerated and the full amount of the loan would be due and foreclosure proceedings would be initiated. (*Id.*) On September 19, 2006, Defendants sent Plaintiff a second "Notice of Default and Acceleration," directing Plaintiff to pay $13,846.25 or his mortgage payments would be accelerated and foreclosure proceedings would be initiated. (*Id.*) Plaintiff also received Notices of Default and Acceleration in November 2006, January 2007, and February 2007. (*Id.*)

In April 2007, Defendants initiated foreclosure proceedings on the Dakota County property. (Aff. Schroeder Ex. I.) In June 2007, Plaintiff filed a Chapter 7 voluntary petition for bankruptcy. (Myrlie Tr. 127:13-22.) The bankruptcy proceedings had the operative effect of

staying the foreclosure activities. Plaintiff's bankruptcy was discharged in February 2008. (Myrlie Tr. 127:23-128:9.)

But, as of March 2008, Defendants again notified Plaintiff that he was again "in serious default" and directing Plaintiff to pay $11,370.64 or his mortgage payments would be accelerated and foreclosure proceedings would be initiated. (Aff. Schroeder Ex. K.) The notice also stated as follows:

> If you are unable to cure the default on or before April 24, 2008, Countrywide wants you to be aware of various options that may be available to you through Countrywide to prevent a foreclosure sale of your property. For example:
>
> - Repayment Plan: It is possible that you may be eligible for some form of payment assistance through Countrywide. Our basic plan requires that Countrywide receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans are also available.
>
> - Loan Modification: Or, it is possible that the regular payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.
>
> - Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through Countrywide even if your home is worth less than what is owed on it.
>
> - Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.
>
> If you are interested in discussing any of these foreclosure alternatives with Countrywide, you must contact us immediately.

(Aff. Schroeder at Ex. K.) Plaintiff testified in his deposition that he understood that these options were not guaranteed and a person facing foreclosure would need to qualify for one of these options. (Myrlie Tr. 132:7-16.) Plaintiff testified at his deposition that based upon this Notice, he would not have been surprised if Defendant pursued foreclosure. (*Id.* at 130:16-23.) Shortly after this notice, Defendants, again, began foreclosure proceedings. (*Id.* at 132:17-20.) A sheriff's sale was ultimately held on November 25, 2008. (*Id.* at 134:2-7.) Plaintiff did not redeem the home during the six-month redemption period following the sheriff's sale. (Myrlie Tr. 135:1-21); *see* Minn. Stat. § 580.23 (permitting a mortgagor a six-month period of redemption following a foreclosure sale).

The record supports Plaintiff's allegations that sometime in 2008 he contacted Defendants and requested assistance due to the impending foreclosure. Plaintiff testified that on or about August 2008, Defendants agreed to a loan modification during a phone call. (Myrlie Tr. 137:3-138:1.) Plaintiff's recollection of the verbal agreement was that the outstanding amount owed would be incorporated within the principal balance and that the loan would be re-amortized. (Myrlie Tr. 141:8-142:7.) Plaintiff did not recall specific terms. (Myrlie Tr. 152:13-153:8.) Plaintiff testified that Defendants also told him that they would need to check with their investors and he understood that it was up the investors to decide whether or not to modify Plaintiff's loan. (Myrlie Tr. 146:2-147:9.) The record is not clear about the timeline of these communications, but it is clear that Defendants wrote to Plaintiff on October 30, 2008, and notified Plaintiff that his request for assistance was denied. (Aff. Schroeder at Ex. L.) Plaintiff testified in his deposition that he attempted to stop the sheriff's sale by calling Defendants and "giv[ing them] notice . . . that they verbally told [him] and agreed to do some sort of modification." (Myrlie Tr. 134:11-21.) Plaintiff also testified that he continued to contact

Defendants until he filed the present lawsuit despite the fact he doubted that he would receive a loan modification and he had no other means of redeeming the home without a modification agreement. (Myrlie Tr. 148:14-152:4.)

## III. ANALYSIS

### a. Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986).

### b. Promissory Estoppel

"Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn.2000) (quotation and citations omitted). "Promissory estoppel has three elements: (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred; and (3) the promise must be enforced to prevent injustice." *Greuling v. Wells Fargo Home Mortgage, Inc.*, 690 N.W.2d 757, 761 (Minn. App. 2005) (citing *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001)).

Defendants contends that their Motion for Summary Judgment should be granted as to Plaintiff's promissory estoppel claim because his promissory estoppel claim is barred by (1)

Plaintiff's failure to present evidence to raise a genuine issue of material fact as to his promissory estoppel claim, (2) a written contract covering the same subject matter, and (3) Minn. Stat. § 513.33.  Because Plaintiff has failed to present evidence to create a genuine issue of material fact as to the elements of promissory estoppel and Plaintiff's claim is barred by the Minn. Stat. § 513.33, this Court recommends that Defendants' motion be granted as to Plaintiff's promissory estoppel claim.

### i. *Elements of Promissory Estoppel*

The first element of promissory estoppel requires proof of a "clear and definite" promise. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995).  Plaintiff has offered neither allegations nor evidence to support that Defendants made a clear and definite promise to modify Plaintiff's mortgage.  Plaintiff's recollection of the verbal agreement amounts to little more than the recitation of the general nature of a loan modification agreement (i.e., the outstanding balance is incorporated within a modified principle and the amortization schedule is amended). (*See* Myrlie Tr. 141:8-142:7.) Furthermore, Plaintiff cannot recall any specific terms of the loan modification agreement. (*See id.* at 152:13-153:8.) Therefore, Plaintiff has failed to raise a genuine issue of material fact with respect to the first element of promissory estoppel.

The second element of promissory estoppel requires proof of the defendant's intent to induce reliance and proof that the plaintiff relied on defendant's inducement to the plaintiff's detriment.  *Ruud*, 526 N.W.2d at 372.  Plaintiff has offered neither allegations nor evidence to support that Defendants intended to induce Plaintiff's reliance or did in fact induce Plaintiff's reliance.[5]  Plaintiff testified that he was not surprised that Defendant foreclosed his mortgage. Plaintiff did not in any way change his position in response to Defendant's alleged promise to

---

[5] Assuming that Plaintiff's allegations are true, at most Plaintiff has shown that he hoped for a loan modification or expected a loan modification to be forthcoming. But, these optimistic expectations are not the type of reliance that is anticipated by promissory estoppel.

8

modify the loan, and Plaintiff acknowledged that he was in no position to avoid foreclosure or redeem the Dakota County property without the loan modification. Therefore, Plaintiff has failed to raise a genuine issue of material fact with respect to the second element of promissory estoppel.

The final element of promissory estoppel requires the Court to find as a matter of law that justice requires enforcing the promise. There is no injustice in not enforcing the alleged loan modification agreement in the present case. In an arm's length agreement, there is no injustice in denying a debtor's request to modify a credit agreement to terms more favorable to the debtor and less favorable to the creditor. At no time since March 2008 through the present has Plaintiff demonstrated any ability to meet the obligations of any loan agreement. If Plaintiff had any capacity to obtain financing or make payments on the loan, he would have demonstrated the ability to do so during the redemption period. Furthermore, enforcing the alleged promise in this action would run contrary to Minn. Stat. § 513.33, which was enacted to "protect lenders from having to litigate claims of oral promises." *Rural American Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 705 (Minn. 1992) (specifying that the Act was originally enacted to address litigation issues in agricultural loans).

Therefore, Defendants are entitled to summary judgment on the ground that Plaintiff has failed to raise a genuine issue of material fact to support his claim of promissory estoppel.

### ii. *Written Contract Covering the Same Subject Matter*

"[A]n express contract covering the same subject matter will preclude the application of promissory estoppel." *Greuling*, 690 N.W.2d at 761; *see also Banbury v. Omnitrition Intern., Inc.*, 533 N.W.2d 876, 880-81 (Minn. App. 1995). In the present case, a mortgage agreement existed between the parties. Defendants contend that as a matter of common law the existence of

9

this mortgage contract bars any promissory estoppel claim. This Court disagrees. In *Banbury v. Omnitrition International*, the plaintiff asserted that the defendant should be estopped from relying on an at-will clause because the defendant's promissory statements and conduct led the plaintiff to believe that the contract between them could only be terminated for cause. 533 N.W.2d at 880-81. The Minnesota Court of Appeals concluded that the plaintiffs' promissory estoppel claim was barred by the existence of the written agreement. *Id.* at 881. The present case is distinguishable from *Banbury* because Plaintiff is asserting that Defendants offered to enter into a loan modification agreement. The loan modification agreement was enumerated as a possible alternative to foreclosure. Whether the parties agreed to enter into a new and distinct loan modification agreement is separate from the parties' obligations under the original loan agreement. Thus, Plaintiff could hypothetically assert a claim of promissory estoppel based upon this new and distinct loan modification agreement.

### iii. *Minnesota Credit Agreement Act*

Minn. Stat. § 513.33, subd. 1, defines "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Subdivision 2 states that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 3(a), further states:

> The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements [stated above]:
>
> (1) the rendering of financial advice by a creditor to a debtor;
> (2) the consultation by a creditor with a debtor; or

> (3) *the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements*.

(Emphasis added.) Furthermore, a credit agreement can never be implied from a relationship between a creditor and a debtor. *Id.* at subd. 3(b).

The Minnesota Court of Appeals held in *Greuling v. Wells Fargo Home Mortgage* that "claims on agreements falling under section 513.33 fail as a matter of law if the agreement is not in writing." 690 N.W.2d at 761-62. In *Grueling*, the creditor asserted that he was induced to purchase a home on unfavorable terms by a promise made by his bank's agent that the bank would refinance the entire transaction immediately after closing. *Id.* at 759. After foreclosure, the creditor brought a claim for promissory estoppel and the district court granted the bank's motion for summary judgment. *Id.* The Minnesota Court of Appeals held that the creditor was "asserting an agreement to enter into a new credit agreement." *Id.* at 762. The Minnesota Court of Appeals held that

> the plain and unambiguous language of the statute clearly prohibits a claim that a new credit agreement is created unless the agreement is in writing, expresses consideration, sets forth all relevant terms and conditions, and is signed by the creditor and debtor. None of those requirements is met in this case.

*Id.* at 762.

The same conclusion is warranted here: The parties' mortgage agreement constitutes a credit agreement as defined by Minn. Stat. § 513.33, subd. 1. Likewise, a loan modification agreement would constitute a credit agreement and maintaining an action based upon a loan modification agreement is barred by Minn. Stat. § 513.33, subd. 3(a)(3), unless the loan modification agreement is in writing, expresses consideration, and sets forth relevant terms and conditions, and is signed. Plaintiff neither alleged nor offered evidence that there was a written

loan modification agreement. Furthermore, Plaintiff cannot recall the terms and conditions of the alleged loan modification agreement. In contrast, Defendants have presented evidence that not only was there never a loan modification agreement but the only credit agreement between the parties permitted Defendants to foreclose upon the Dakota County property. Therefore, Defendants are entitled to summary judgment on the ground that Plaintiff's promissory estoppel claim is barred by Minn. Stat. § 513.33.

### c. Negligence

Plaintiff's negligence claim is without merit. The elements of a claim for negligence are (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn. 1990). In Plaintiff's Complaint, his negligence cause of action merely recites the elements of negligence without offering any factual explanation as to what Defendants did that was tortious. Defendant's Motion for Summary Judgment should be granted as to Plaintiff's negligence claim for the following reasons.

First, Plaintiff's negligence seems to assert a negligent breach of contract theory. Plaintiff seems to contend that Defendants *negligently* failed to follow through on their promise to enter into a loan modification agreement and thereby breached their agreement to modify Plaintiff's loan. This is not a claim upon which relief can be granted because negligent breach of contract is not a cause of action in Minnesota. *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 424 (Minn. 1987).

Second, Plaintiff has neither identified nor offered any argument as to what duty Defendants owed to Plaintiff in connection with the loan modification agreement. "Existence of a duty in a negligence case is a question of law." *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001). As a matter of law Defendants owed Plaintiff no special duties. *See*

*Hurley v. TCF Banking & Sav., F.A.*, 414 N.W.2d 584, 587 (Minn. App. 1987) (stating that "a bank is not in a fiduciary relationship with a customer, rather the relationship is one of debtor and creditor"). Furthermore, Plaintiff acknowledged in his deposition that the loan modification was discretionary and subject to the approval of those who invested in the loan.

Third, Plaintiff has neither alleged nor offered any evidence to show that Defendants' actions proximately caused Plaintiff's damages. The foreclosure was permitted by the parties' loan agreement. The foreclosure was caused by Plaintiff's inability to make payments pursuant to the loan agreement. The loan modification was a way to avoid foreclosure. Thus, the absence of a loan modification agreement is not a cause of foreclosure.

Fourth, Plaintiff has presented no evidence to support his contention that he suffered damages. Plaintiff has continued to live in the home without making any mortgage payments, which negates his claim to having suffered increased costs. Plaintiff also testified that the Dakota County property is worth less than what he owes, which negates his claim to lost profits. Plaintiff's loss of remedies theory is nebulous and there has been no showing as to what remedies were *unavailable* to Plaintiff during the redemption period and *available* to Plaintiff prior to the foreclosure.

Therefore, for all of these reasons, Defendants are entitled to summary judgment on Plaintiff's claim of negligence.

### d. Punitive Damages

Plaintiff acknowledged in his deposition that he should not have pleaded punitive damages in his Complaint. (*See* Myrle Tr. 166:10-18.) Pleading punitive damages in an initial complaint is barred by Minn. Stat. § 549.191. Therefore, this Court recommends that

Defendant's Motion for Summary Judgment be granted with respect to the issue of punitive damages.

## IV. RECOMMENDATION

Based upon the record, memoranda, and oral arguments of the parties, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Summary Judgment [Docket No. 26] be **GRANTED** and Plaintiff's Complaint [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

Dated:     12/30/10    

          s/ Arthur J. Boylan    
Chief Magistrate Judge Arthur J. Boylan
United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before     1/14/11    .